IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristin Lawson, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>   v.<br><br>Full Tilt Poker Ltd., et al.<br><br>  Defendants. | Case No. 11-cv-06087 (LBS) |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND COMPLAINT**

While Defendants Full Tilt Poker Ltd., Tiltware LLC, Vantage Ltd., Filco Ltd., Kolyma Corp. A.V.V., Pocket Kings, Ltd., Ranston Ltd., Mail Media Ltd., Raymond Bitar, Howard Lederer, and Christopher Ferguson ("Defendants") "believe it is appropriate for Plaintiff to amend her Complaint," they nonetheless oppose Plaintiff's motion for leave to amend, arguing that the Court's January 30, 2012 Order with respect to the pleading in *Segal v. Bitar* 11-civ-4521, Dkt. 103 (LBS) ("*Segal* Order") conclusively and finally decided the issues of personal jurisdiction over Defendant Howard Lederer and Plaintiff's standing to bring RICO claims against any Defendant. In doing so, Defendants ignore the liberal standard of Rule 15(a), as well as the substantial difference between the pleading in the *Segal* action that the Court addressed and the Proposed Amended Complaint ("Amended Complaint") in the instant action. The Amended Complaint adds detail to Plaintiff's claims and cures the deficiencies identified in the *Segal* pleading. Accordingly, Plaintiff's Motion should be granted.

## ARGUMENT

### A. Rule 15(a) Sets Forth a Liberal Standard for Amendment

Absent "any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal citations omitted).

Rule 15(a), and the principle that permission to amend to state a claim should be freely granted, "is likewise applicable to dismissals for failure to plead an adequate basis for federal jurisdiction" *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991) (citing 3 Moore's Federal Practice ¶ 15.10, at 15-104 (2d ed.1990) ("[i]n dismissing a complaint for ... failure to show jurisdiction, the court should heed the admonition of Rule 15 and allow amendment 'freely' if it appears at all possible that the plaintiff can correct the defect").

### B. Plaintiff's Proposed Amendment Is Not Futile

The Amended Complaint seeks not only cures the defects perceived in the *Segal* pleading, but also adds information regarding Full Tilt's unlawful conduct, adds a new Defendant identified by the Department of Justice, and drops numerous previously-named Defendants in light of the *Segal* Order. As even the Defendants recognize, some of these modifications are appropriate and should be allowed. *See* Def. Opp. at 2 ("Defendants believe it is appropriate for Plaintiff to amend her Complaint …").

Defendants' challenge should therefore be read as arguing that Plaintiff's proposed amendment is futile as to the issues they raise – relating to whether Plaintiff has properly alleged personal jurisdiction over Defendant Lederer and whether Plaintiff has properly alleged standing

to bring RICO claims against any Defendant – issues which they interpret as finally decided based on a ruling on a pleading in the *Segal* action.  This challenge should be rejected, however, as Defendants seek to deny Plaintiff her day in Court by purposefully ignoring the substantial allegations that Plaintiff has added, many of which relate directly to the defects the Court identified in *Segal.*

As Defendants point out, *Segal* is "instructive."  See Def. Opp. at 1.  However, *Segal's* holding should not be construed as preventing Plaintiff from filing her Amended Complaint.[1]  This is especially true because Plaintiff's allegations provide greater information about the scope of Full Tilt's wrongful conduct, and each Defendant's specific ties to that wrongful conduct.  As will be shown, many of Plaintiff's new allegations are precisely targeted to cure the prior deficiencies in the *Segal* pleading.

> 1. *Plaintiff's Amended Complaint Adds New Information About the Scope and Tenor of Each Defendant's Wrongdoing*

Plaintiff's initial Complaint[2], as the *Segal* complaint, alleged facts gleamed from the US Attorney for the Southern District of New York's investigation into Full Tilt Poker and other internet poker companies during the course of which arrest warrants were issued for the founders for, among other offenses, money laundering, conspiracy to commit wire fraud, and conspiracy to commit bank fraud.[3]

---

[1] Defendants' arguments are more appropriately decided in the context of a Rule 12(b)(6) motion.  *See Alli v. Boston Mkt. Co.*, No. 10-cv-4 (JCH), 2011 U.S. Dist. LEXIS 146538 at *3 (D. Conn. June 23, 2011) (refusing to "prejudg[e] the merits of . . . the pending Motion to Dismiss" when considering whether to grant plaintiffs' motion for leave to amend the complaint).

[2] Dkt. 1 ("Initial Complaint").  Importantly, the Initial Complaint has not yet been tested by a motion to dismiss.  Additionally, even as filed it was not identical to the *Segal* Complaint.

[3] DOJ Civil Complaint DOJ Civil Complaint, 11-Civ-2564 (LBS) (S.D.N.Y., Apr. 15, 2011) (Attached as Exhibit A to Plaintiff's Initial Complaint).

While Plaintiff's Initial Complaint speaks for itself, the crux of the matter *as known at that time*, was that after being promised that players' deposits would be "safe and secure" with Full Tilt, Plaintiff and the class were wrongfully denied access to their own funds after "Black Friday." On that date, April 15, 2011, the U.S. Attorney for the Southern District of New York seized the assets of the "Big Three" internet poker companies, including Full Tilt, arrest warrants were issued for the founders of these companies, and the Department of Justice filed a civil suit against the three companies for money laundering and for in rem forfeiture of all assets and proceeds derived from the illegal acts in which these companies allegedly engaged. Initial Complaint at ¶¶ 5-10.

As stated at the time, "[s]ince April 15, 2011, … U.S. players with Full Tilt Player Accounts have been wrongfully denied access to their own funds. No legitimate explanation has been offered by Full Tilt for refusing to permit U.S. players to cash out their accounts." *Id.* at ¶ 8. In her Initial Complaint, Plaintiff also provided information about each Defendant, including for the corporate Defendants, information about their position in the Full Tilt hierarchy and their general role, and for individual Defendants, information about their position at Full Tilt, their job title, their general role within the company, their status as owners and/or executives, and any other information known about their connection to Full Tilt. *See id.* at ¶¶ 15-37.

Against this backdrop, Plaintiff's Amended Complaint adds important new revelations gleamed from the DOJ's September 20, 2011 Verified First Amended Complaint, attached as an exhibit to the Amended Complaint. Plaintiff's Amended Complaint includes new allegations showing that, not only did Full Tilt fail to return players' funds on demand, but that "Full Tilt and its owners allowed players to deposit, and play poker with, phantom funds that Full Tilt knew, in many cases, would be impossible to collect from players' bank accounts – in effect

operating as a Ponzi scheme – and that Full Tilt's owners, including the individual defendants, continued at that time to pay out large amounts of players' money to themselves." Amended Complaint at ¶ 10.  As stated by U.S. Attorney Preet Bharara and quoted in the first time in the Amended Complaint, "*Full Tilt was not a legitimate poker company, but a global Ponzi scheme. Full Tilt insiders lined their own pockets with funds picked from the pockets of their most loyal customers while blithely lying to both players and the public alike about the safety and security of the money deposited.*" *Id.* at ¶ 93 (emphasis added).

Besides these new allegations, which were not alleged in either the Initial Complaint or *Segal* and were therefore not considered by the Court previously, Plaintiff's Amended Complaint also provides specific information about how each Individual Defendant contributed to Full Tilt's tortious activity.  Most importantly for purposes of this motion, Plaintiff now alleges that the Individual Defendants that remain in the case[4] directly contributed to the conversion by unlawfully funneling players' funds to their personal accounts for their own individual use. *See id.* at ¶¶ 26-30, 33, 42, 65-66, 71-72, 85-92, 99-100.

Under the liberal standard of Rule 15(a), Plaintiff should be permitted to add these significant factual revelations to her complaint.

### 2. *Plaintiff's Amended Complaint Demonstrates Personal Jurisdiction Over Defendant Lederer*

In *Segal*, the Court denied personal jurisdiction over the individual defendants under Fed. R. Civ. P. 4(k)(I)(A) by virtue of N.Y. C.P.L.R. § 302(a) in part because the *Segal* plaintiffs made "no allegations that any of the individual defendants helped maintain or operate the Full Tilt Poker website."  *See Segal* Order at 10.  This was because the *Segal* plaintiffs claimed that

---

[4] Plaintiff's Amended Complaint drops numerous Defendants, including ten previously-named individuals and one previously-named entity.

Defendants transacted business in New York by operating or facilitating the operation of the Full Tilt website, fulltiltpoker.com, which New York residents used to gamble online. *See id.* at 7.

Without delving too deep into issues not specifically raised (and more appropriately decided in the context of a motion to dismiss), Plaintiff's Amended Complaint includes new allegations tying Defendant Lederer to statements made on the fulltiltpoker.com website and elsewhere that were intended to induce Plaintiff, and class members nationwide and in New York, into depositing their funds with Full Tilt. Specifically, the Amended Complaint alleges that Lederer is an owner, a member of the Board of Directors, and a "managing member" of Tiltware LLC ("Tiltware"), Full Tilt's "marketing wing." Amended Complaint at ¶ 19; *see also id.* at ¶ 27. According to the Amended Complaint, Tiltware "helped to create and disseminate false statements made to Plaintiff and the Class regarding the 'safety and security' of players' funds." *Id.* at ¶ 19. Regarding Lederer's role at Tiltware, Plaintiff alleges that, in March of 2008, he advised "a Full Tilt Poker employee that Full Tilt Poker could represent to players that Full Tilt Poker kept all of its player funds in segregated accounts and that funds would be available for withdrawal by players at all times." *Id.* at ¶¶ 65. Subsequently, based in part on this information and Lederer's position as a manager of Full Tilt's "marketing wing," Full Tilt Poker created several form e-mail templates to be used by Full Tilt Poker to respond to player inquiries about the security of their funds." *Id.* at ¶¶ 65-67. Similar statements about the safety and security are also made on Full Tilt's website. *Id.* at ¶¶ 5, 61, 63. Plaintiff's new allegations thus tie Defendant Lederer to false reassurances, provided through the website and via email, to Plaintiff and class members nationwide, and in New York, in an effort to get them to trust Full Tilt with their funds. *See also id.* at ¶¶ 33, 41, 113-114, 120. These new allegations are relevant

to whether this Court has personal jurisdiction over Defendant Lederer, and should be given full and fair briefing.

In *Segal*, the Court also denied personal jurisdiction over the individual defendants under Fed. R. Civ. P. 4(k)(I)(A) by virtue of N.Y. C.P.L.R. § 302(a)(3)(ii) in part because the *Segal* plaintiffs failed to demonstrate that "the individual defendants committed a tortious act of any sort." *See Segal* Order at 12.  Plaintiff's Amended Complaint clearly alleges that Defendant Lederer committed a tortious act.

Defendants' argument that Lederer can only be held to have committed a tortious act if she alleges that "Lederer knew about or consented to blocking Full Tilt customers' access to their accounts on or after April 15, 2011" ignores Plaintiff's allegations demonstrating that the crux of this case no longer turns, simply, on access to players' funds after April 15, 2011.  *See* Def. Opp. at 6.  Rather, and as is made clear in the Amended Complaint, Full Tilt operated as a Ponzi scheme *well before that date*, and Defendant Lederer was an active and willing participant. *See* Amended Complaint at ¶¶ 7, 10, 19, 27, 65, 75, 78, 88, 90, 93, 98-100.  Plaintiff's claims against Lederer are not based merely on his "ownership" in Full Tilt.  Rather, Plaintiff now alleges that Lederer himself "personally participated in [the] tortious acts," as required by the *Segal* Order at 13.

Plaintiff now alleges that Lederer himself actively participated in the conversion of Plaintiff's and class members' funds because, by virtue of his status as a Full Tilt Poker insider, his knowledge of Full Tilt's financial situation including problems processing transactions, and his control over corporate finances, he personally made off with class members' funds in the form of "ownership distributions," "profit sharing" distributions, personal loans, and other payments made at the expense of class members.  *See* Amended Complaint at ¶ 100.  It is alleged

7

that Defendant Lederer personally received approximately $42 million from Full Tilt, including approximately $37,856,010.92 in ownership distributions and at least $4 million in "profit sharing" payments. *Id.* at ¶ 27. These transfers, to Lederer and other Individual Defendants, totaled more than $100 million combined and "continued at a rate of approximately $10 million per month even up to the summer of 2010, when Full Tilt's management was aware that the company was having problems collecting funds from US banks." *Id.* at ¶ 7; *see also id.* at ¶ 8. Because Plaintiff alleges that Lederer himself participated in the conversion by actually converting class members' funds to his own personal use, Plaintiff's Amended Complaint is materially different from the *Segal* Complaint, and Plaintiff's leave to amend should be allowed so the Amended Complaint can be tested.

### 3. Plaintiff's Amended Complaint Demonstrates Plaintiff's RICO Standing

Contrary to Defendants' unsupported assertions, Plaintiff has also added facts demonstrating her standing to bring the RICO claims. *See* Def. Opp. at 6-7. In *Segal*, this Court held that a Plaintiff has standing to sue under 18 U.S.C. § 1964(c) where she can show that she "was injured in [her] business or property by reason of a violation of" the civil RICO statute. *See Segal* Order at 19. The Court further held that such a finding required a showing that the RICO violation is both a "but for" cause of the loss, as well as the legal or proximate cause. *See id.* The Court stated that the plaintiff must "show some direct relation between the injury asserted and the injurious conduct alleged." *See id.* (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

In *Segal*, the Court characterized the plaintiffs' injuries as losing "the ability to withdraw the money in their player accounts on April 15, 2011." *See Segal* Order at 19. The Court went on to state that, in light of this injury,

> at this stage in the litigation it remains unclear whether the direct cause of Plaintiffs' injuries was the decision by the U.S. Attorney's office to temporarily shut down the Full Tilt Poker website and seize the company's assets or was instead, as Plaintiffs' conversion allegations suggest, the subsequent decision by one or more of the Defendants to halt player withdrawals from the Full Tilt Poker website. What is clear is that, in neither case was the direct cause of the injuries the racketeering offenses alleged in the complaint. Plaintiffs' allegations therefore establish too attenuated a chain of causation to support standing under § 1964(c).

*Id.* at 19-20.

Plaintiff's new allegations adequately address this Court's concerns. Plaintiff's Amended Complaint makes clear that Plaintiff's injury derives, not just from a temporary inability to access the funds in her players' account. As alleged in the Amended Complaint, *Plaintiff's injury is based on her inability to recover her funds as a direct result of the wholesale looting of her players' account by the Defendants and as a direct result of Defendants' frauds.* Plaintiff specifically alleges that, absent Defendants' false statements about the safety and security of her funds (the wire fraud), "Plaintiff would not have provided her funds to Full Tilt" *in the first place*. *See* Amended Complaint at ¶¶ 83-84.

While in *Segal* it was "unclear whether the direct cause of Plaintiffs' injuries was the decision by the U.S. Attorney's office to temporarily shut down the Full Tilt Poker website and seize the company's assets or was instead, as Plaintiffs' conversion allegations suggest, the subsequent decision by one or more of the Defendants to halt player withdrawals from the Full Tilt Poker website," *see Segal* Order, at 19-20, *in the Amended Complaint it is absolutely clear that Plaintiff's funds were doomed prior to the April 15, 2011 government raids. Compare Segal* Order at 19-20 *with* Amended Complaint at ¶¶ 68-72 (showing that Full Tilt had a massive financial shortfall *before* the raids even occurred). Thus, Plaintiff's amended pleading demonstrates that her losses are directly tied to Defendants' wire fraud. *See* Amended

9

Complaint at ¶¶ 83-84, 109-114.  Plaintiff alleges that she made a $600 deposit to her player account in June of 2008 as a result of Full Tilt's false statements about the safety and security of player funds.  *See id.* at ¶¶ 60-64, 114.  Even at that time, the Defendants knew that such deposits were not "safe and secure" (even absent the subsequent government crackdown) because such funds were at all times commingled and available to be paid out to the personal use of Full Tilt insiders.  *See id.* at ¶¶ 6-8, 10, 13, 42, 45, 61, 70-72, 78, 87-92.  Thus, while the Initial Complaint and the complaint at issue in *Segal* described each plaintiff's and the class members' losses as potentially due to elements outside the control of Full Tilt, the Amended Complaint directly ties such losses to Full Tilt's RICO violations.  Accordingly, Plaintiff's requested amendment is not futile, and leave to amend should be allowed so Plaintiff's Amended Complaint can be properly tested.

### C. The Interests of Judicial Economy Are Not Hampered by Plaintiff's Motion

Finally, Plaintiff is mindful of the interests of judicial economy and in maintaining consistency between related cases, but suggests that Plaintiff's requested amendment will not result in inconsistencies.  As demonstrated above, Plaintiff's Amended Complaint is substantially different from the *Segal* Complaint on which this Court ruled.  Leave to amend should not be denied merely because of the ruling in *Segal*, a related case with substantially different allegations.  It is likely that if Plaintiff's Amended Complaint is ultimately upheld, the plaintiffs in *Segal* will conform their complaint to the Court's ruling in the instant action.  Defendants' arguments cannot overcome the clear requirement that leave to amend should be granted liberally under Rule 15(a), and that leave should only denied in limited, specified, circumstances, none of which are present here.  Plaintiff has a right to her day in Court, and her complaint has yet been tested.

Dated:  February 29, 2012                            Respectfully submitted,

**WOLF POPPER LLP**


_____/s/ Lester L. Levy_____
Lester L. Levy (LL9956)
Robert S. Plosky (RP7829)
845 Third Avenue, 12th Floor
New York, NY 10022
(212) 759-4600

*Local Counsel*

Mila F. Bartos
Stan M. Doerrer
FINKELSTEIN THOMPSON LLP
1050 30th St. NW
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
mbartos@finkelsteinthompson.com
sdoerrer@finkelsteinthompson.com

Geoff Herzog, Esq.
LAW OFFICES OF GEOFFREY G. HERZOG
208 21st Ave., South.
Jacksonville Beach, FL. 32250
gherzog@me.com

*Attorneys for Plaintiff*